UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JEFFERY SCOTT TRADER, SR.         CIVIL ACTION NO. 06-2210

VERSUS                            **REFERRED TO:**

U.S. COMMISSIONER SOCIAL          **MAGISTRATE JUDGE HORNSBY**
SECURITY ADMINISTRATION

**MEMORANDUM RULING**

Jeffery Scott Trader, Sr. ("Plaintiff") filed an application for supplemental security income based on problems related to post-herpetic neuralgia caused by a bad case of chickenpox as a child. ALJ Osly Deramus concluded that Plaintiff, who was 43 at the time of his hearing, had the residual functional capacity ("RFC") to perform the demands of medium work, subject to the limitation that Plaintiff could only occasionally climb, balance, stoop, kneel, crouch or crawl. A vocational expert ("VE") testified that a person with that RFC and Plaintiff's other vocational factors could perform the jobs of dishwasher/kitchen helper and finisher-patcher, which exists in the relevant area. Based on that testimony, the ALJ found at step five that Plaintiff was not disabled.

The Appeals Council denied a request for review. Plaintiff filed this civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). Both parties filed written consent to have a magistrate judge decide the case and, pursuant to 28 U.S.C. § 636(c) and the standing order of the district court governing social security cases, the action was referred

to the undersigned for decision and entry of judgment.  For the reasons that follow, the Commissioner's decision to deny benefits will be affirmed.

Plaintiff complains that the ALJ's decision is not supported by substantial evidence because the hypothetical question posed to the VE, in response to which she identified the two jobs cited in the final decision, did not include the limitation that Plaintiff could only occasionally stoop, crouch, etc.  Furthermore, Plaintiff says, the dishwasher/kitchen helper job is listed in the Dictionary of Occupational Titles ("DOT") as requiring frequent stooping and crouching.  The Commissioner concedes that the DOT provides that the job entails frequent stooping, which exceeds the ALJ's finding regarding Plaintiff's ability.

The Commissioner argues that the decision should be nonetheless affirmed because the finisher-patcher job was also identified, but the VE testified that there were only 42 such jobs in Louisiana.  There must be a significant number of jobs available to support a finding of not disabled.  There is no magic formula for making the determination when the number of jobs reaches the level of significance. Courts have found that significant jobs were available when there were only a few hundred jobs in a state, but the 42 jobs identified in Louisiana do not appear to be enough, standing alone, to affirm the decision.

The VE identified additional jobs that a person who was even more limited than Plaintiff (able to do only light work with occasional stooping, crouching, etc.) could perform. She identified a position of airline security, with more 1,300 hundred jobs in Louisiana.  She also testified that a person who could do only sedentary work and was unable to stoop,

crouch, etc. could perform the position of surveillance system monitor, which has approximately 150 jobs in Louisiana.

The ALJ did not, however, cite those other jobs in his written decision. Plaintiff argues that it would be inappropriate to guess as to the ALJ's reasons for leaving out mention of the airline security and surveillance system monitor jobs. The court is ordinarily hesitant to assume rationales to support an ALJ's decision, and the decision must ordinarily stand or fall on its own logic. In this case, however, observing the testimony from the VE about other available jobs does not provide a new rationale for the ALJ's decision, but merely lends additional support to a conclusion that was somewhat undermined when the dishwasher jobs were excluded from consideration. The court finds that it is appropriate to consider that evidence in this case and conclude that the ALJ's step five decision is supported by substantial evidence in the record.

Plaintiff next complains that the ALJ wrongfully determined that Plaintiff was less than credible. Plaintiff testified that he had work experience in the oilfield and as a construction laborer, but last worked three years earlier. Plaintiff said that was when his pain became too much to bear. He said the pain had begun in his back and side and leg about 12 years earlier. His doctor told him that he had shingle scars and there was nothing that could be done to correct it. Plaintiff said the pain covers his left side, and no days are good days. Plaintiff testified that he could take only a few steps at a time, and he spends his days sitting or lying down. "Most all of my life, I'm laying down." Plaintiff rated his pain eight out of

10 100% of the time, with any movement causing aggravation. Plaintiff said he was taking methadone and Neurontin for pain, plus a sedative to help sleep. Plaintiff said he could not squat down and pick up an object from the floor and could not even use his left hand to so much as pick up a coin more than once. Tr. 94-107.

Dr. Tom Senff, an internal medicine physician, conducted a consultative examination in March 2006. Plaintiff described his claims of pain as well as diminished range of motion, but Dr. Senff noted the results of a physical examination in the record that indicated "normal range of motion, normal strength, no neurologic, sensory or motor deficits." Another note stated that Plaintiff had "normal gait, normal range of motion in the neck, good strength of upper extremities and lower extremities." Dr. Senff conducted his own physical examination during which Plaintiff showed a "full range of motion in all extremities," although Plaintiff did complain of pain with flexion of the spine. Dr. Senff stated in his conclusion that many of the symptoms described by Plaintiff (diminished range of motion and motor weakness) "do not occur in chronic herpes zoster problems which is sensory only." Dr. Senff said he was "unable to account for the difference between the symptoms that he gives me and his essentially normal neurologic exam with full range of motion ..." Tr. 83-84.

The ALJ considered Dr. Senff's report, and he also discussed Plaintiff's subjective complaints brought out in his testimony. After considering all of the evidence, the ALJ concluded that Plaintiff was not entirely credible about the extent of his pain. Tr. 12-13. Plaintiff takes issue with Dr. Senff's view that the symptoms were not likely to have been

caused by Plaintiff's medical condition, and he urges that a diminished range of motion is nonetheless limiting even if caused by some other condition. There may be room for reasonable disagreement about Dr. Senff's conclusions and whether his examination was in full accord with AMA procedures, but the report nonetheless provided reasonable and objective evidence for the ALJ to assess when determining the extent of Plaintiff's credibility. The ALJ reached a reasonable and reasoned decision in that respect. Credibility assessments are particularly within the province of the hearing-level officer and entitled to judicial deference. Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994). The court finds no basis to upset the ALJ's assessment in this case, so a judgment affirming the Commissioner's decision will be entered.

THUS DONE AND SIGNED at Shreveport, Louisiana, this 12th day of February, 2008.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE